No. 18-16663

_____

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

CITY OF OAKLAND, et al.,
*Plaintiffs/Appellants,*

v.

B.P. p.l.c., et al.,
*Defendants/Appellees.*

_____

Appeal from the United States District Court
for the Northern District of California
Nos. 3:17-cv-06011 and 3:17-cv-06012 (Hon. William H. Alsup)

_____

**BRIEF OF THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF THE PETITION FOR REHEARING**

_____

JONATHAN D. BRIGHTBILL
ERIC GRANT
*Deputy Assistant Attorneys General*
ROBERT J. LUNDMAN
R. JUSTIN SMITH
CHRISTINE W. ENNIS
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 514-0943
eric.grant@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF THE UNITED STATES ................................................... 1

STATEMENT OF THE CASE................................................................... 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ............................................................................................ 3

I.     Removal based on federal question jurisdiction presents issues
       that should be reheard by the panel or en banc Court .................................... 3

       A.     The panel's failure to recognize "arising under federal
              common law" as a basis for removal conflicts with this
              Circuit's law and is an issue of exceptional importance...................... 3

       B.     Whether this case is governed by federal or state law is
              an issue of exceptional importance requiring rehearing ..................... 6

II.    Rehearing is necessary to restore this Court's uniform approach
       to deciding whether improper removal may be excused when a
       jurisdictional defect is cured before a decision on the merits ....................... 12

CONCLUSION ......................................................................................... 17

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*American Electric Power Co. v. Connecticut*,
564 U.S. 410 (2011)............................................................ 4, 6-7, 9

*ARCO Environmental Remediation, LLC v. Department of Health
& Environmental Quality*, 213 F.3d 1108 (9th Cir. 2000) .............................5

*Banco Nacional de Cuba v. Sabbatino*,
376 U.S. 398 (1964).......................................................................4

*Barbara v. New York Stock Exchange*,
99 F.3d 49 (2d Cir. 1996) ...........................................................16

*Bell v. Cheswick Generating Station*,
734 F.3d 188 (3d Cir. 2013) ........................................................7

*Bernstein v. Lind-Waldock & Co.*,
738 F.2d 179 (7th Cir. 1984) ................................................. 16-17

*Brough v. United States Steelworkers of America*,
437 F.2d 748 (1st Cir. 1971)................................................. 16-17

*Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*,
756 F.3d 327 (5th Cir. 2014) ......................................................13

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996)............................................................. 13-16

*City of Milwaukee v. Illinois*,
451 U.S. 304 (1981)...................................................................6, 9

*Correctional Services Co. v. Malesko*,
534 U.S. 61 (2001).......................................................................9

*Direct Marketing Ass'n v. Brohl*,
575 U.S. 1 (2015)......................................................................17

*Ellingsworth v. Vermeer Manufacturing Co.*,
   949 F.3d 1097 (8th Cir. 2020) ....................................................................16

*Federated Department Stores, Inc. v. Moitie*,
   452 U.S. 394 (1981)......................................................................................17

*Gentek Building Products, Inc. v. Sherwin-Williams Co.*,
   491 F.3d 320 (6th Cir. 2007) ......................................................................13

*Georgia v. Tennessee Copper Co.*,
   206 U.S. 230 (1907)........................................................................................6

*Grable & Sons Metal Products, Inc. v. Darue Engineering &
   Manufacturing*, 545 U.S. 308 (2005) ...........................................................1

*Illinois v. City of Milwaukee*,
   406 U.S. 91 (1972)..........................................................................................6

*In re Lipitor Antitrust Litigation*,
   855 F.3d 126 (3d Cir. 2017) ........................................................................14

*International Paper Co. v. Ouellette*,
   479 U.S. 481 (1987).................................................................................... 6-8

*Merrick v. Diageo Americas Supply, Inc.*,
   805 F.3d 685 (6th Cir. 2015) ........................................................................7

*Moffitt v. Residential Funding Co., LLC*,
   604 F.3d 156 (4th Cir. 2010) ......................................................................15

*New SD, Inc. v. Rockwell International Corp.*,
   79 F.3d 953 (9th Cir. 1996) ..........................................................................5

*North Carolina ex rel. Cooper v. TVA*,
   615 F.3d 291 (4th Cir. 2010) ........................................................................7

*Paros Properties, LLC v. Colorado Casualty Insurance Co.*,
   835 F.3d 1264 (10th Cir. 2016) ..................................................................15

*Retail Property Trust v. United Brotherhood of Carpenters*,
   768 F.3d 938 (9th Cir. 2014) ......................................................................14

*Rivet v. Regions Bank*,
 522 U.S. 470 (1998)......................................................................................5

*Sam L. Majors Jewelers v. ABX, Inc.*,
 117 F.3d 922 (5th Cir. 1997) .....................................................................5

*Texas Industries v. Radcliff Materials, Inc.*,
 451 U.S. 631 (1981).....................................................................................4

*Thermoset Corp. v. Building Materials Corp. of America*,
 849 F.3d 1313 (11th Cir. 2017) ...............................................................13

*United States v. Standard Oil*,
 332 U.S. 301 (1947).................................................................................4, 8

*Wayne v. DHL Worldwide Express*,
 294 F.3d 1179 (9th Cir. 2002) ..................................................................5

*Zambelli Fireworks Manufacturing Co., Inc. v. Wood*,
 592 F.3d 412 (3d Cir. 2010) ....................................................................14

## Statutes

28 U.S.C. § 1331 ..............................................................................................12

28 U.S.C. § 1441(a) .................................................................................... 12-13

42 U.S.C. § 7401 ................................................................................................1

42 U.S.C. § 7410 ..............................................................................................11

42 U.S.C. § 7475 ..............................................................................................11

42 U.S.C. § 7607 ..............................................................................................11

42 U.S.C. § 15927 ............................................................................................10

## Other Authorities

40 C.F.R. § 51.102 ...........................................................................................11

Executive Order No. 13,783, 82 Fed. Reg. 16,093 (Mar. 28, 2017) .........................1

## INTEREST OF THE UNITED STATES

Defendants/Appellees' Petition for Rehearing, DktEntry 175 (July 8, 2020), presents questions of federal law as to which the United States has a substantial interest and which warrant rehearing. The U.S. Environmental Protection Agency has primary responsibility, pursuant to a delegation from Congress, for administering certain programs under the Clean Air Act (CAA), 42 U.S.C. §§ 7401 et seq., including those regulating greenhouse gas emissions. The United States also has economic and national security interests in promoting appropriate development of fossil fuels. *See, e.g.*, Executive Order No. 13,783, 82 Fed. Reg. 16,093 (Mar. 28, 2017). Pursuant to these responsibilities, the United States has an interest in the correct and uniform resolution of claims like those asserted by Plaintiffs/Appellants the Cities of Oakland and San Francisco (the Cities).

## STATEMENT OF THE CASE

In this appeal, Defendants primarily argued that the Cities artfully pled claims under state common law; and that because those claims properly arose under federal common law, they could be removed. Opinion at 13. The panel held that to look beyond the Cities' reliance on state law, the case had to fall into "one of the two exceptions to the well-pleaded complaint rule": cases for which federal law is a necessary element of the claim for relief pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), or the complete

preemption doctrine. Opinion at 18. The panel concluded that neither exception applied. *Id.* at 19-23. The panel never addressed this Court's precedent recognizing that federal common law is a third ground for removing putative state-law claims.

Defendants also argued that the district court properly denied the Cities' request to remand to state court because the Cities amended their complaints to assert federal common-law claims and thereby created federal question jurisdiction and waived their right to contest removal. Opinion at 23. The panel ruled, again in contravention of this Court's precedent, that this reasoning "generally will not apply when a district court dismisses a complaint for failure to state a claims under Rule 12(b)(6)." *Id*. at 27.

## SUMMARY OF ARGUMENT

The panel's jurisdictional rulings are inconsistent with the decisions of this Court and of other courts of appeals. These issues are of exceptional importance.

First, this Court recognizes *three*, not *two*, exceptions to the well-pleaded complaint rule. A putative state-law claim is also removable if alleged in a field that is properly governed by federal common law such that a cause of action, if any, is necessarily federal in character. The panel disregarded a longstanding line of Supreme Court cases holding that claims involving interstate air and water pollution arise directly under federal common law. Plaintiffs pled such common-law claims, even though they did so "artfully" in an attempt avoid federal jurisdiction.

2

Second, the panel also introduced a new restriction on the ability of this Court to preserve a district court's judgment. Previously, the erroneous removal of a case to federal court could be excused in the interests of finality, efficiency, and economy. Under the panel decision, however, there is confusion in this Court's precedents as to whether, even if a change in circumstances vests a district court with subject matter jurisdiction following an allegedly erroneous removal, the court may sustain its decision on the merits if that decision was pursuant to a motion to dismiss, as opposed to a motion for summary judgment. Such a rule creates perverse incentives for litigants. It creates a "heads I win, tails you lose" regime for plaintiffs. And it will require defendants to wait for summary judgment to seek final resolution of claims that might be disposed of on motions to dismiss. This ruling also conflicts with the precedents of the Supreme Court and this Court. Because it further contributes to a split in the federal courts of appeals on this exceptionally important question, rehearing is necessary.

## ARGUMENT

**I.   Removal based on federal question jurisdiction presents issues that should be reheard by the panel or en banc Court.**

**A.   The panel's failure to recognize "arising under federal common law" as a basis for removal conflicts with this Circuit's law and is an issue of exceptional importance.**

The panel decision is inconsistent with prior decisions of this Court and of other courts. It also presents an issue of exceptional importance. It fails to recognize

that where a putative state-law claim is alleged in a field that the Constitution commits to the national government and that is properly governed by federal common law, that claim may be removed. Here, the interstate pollution claims asserted by the Cities arise under federal common law. But the panel erroneously found that "there are only two exceptions" to the well-pleaded complaint rule" — *Grable* and complete preemption. Opinion at 18.

The Supreme Court has made clear that state law can be wholly displaced in areas that are inherently and necessarily federal in nature. *American Electric Power Co. v. Connecticut*, 564 U.S. 410, 422 (2011) (*AEP*) (citing *United States v. Standard Oil*, 332 U.S. 301 (1947)). This is true where "a federal rule of decision is necessary to protect uniquely federal interests." *Texas Industries v. Radcliff Materials, Inc.*, 451 U.S. 631, 641 (1981) (quoting *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 426 (1964)). In *Standard Oil*, the federal government sought to recover medical expenses that it incurred after a U.S. soldier was struck by a vehicle. The Supreme Court held that the "scope, nature, legal incidents and consequences of the relationship between persons in service and the Government are fundamentally derived from federal sources," such that the dispute was governed by federal common law. 332 U.S. at 305-06. Interstate pollution claims fall within this rule and arise in an inherently federal area in which state law does not apply.

4

The *Standard Oil* rule is distinct from complete preemption, which applies when a federal statute displaces (otherwise valid) state claims. In areas governed by federal law, state law could never validly apply in the first place. As a matter of constitutional structure, any claims asserted in this area are inherently federal. Thus, a plaintiff's putative invocation of state law in this area is the type of "artful pleading" by "omitting to plead necessary federal questions" that must be disregarded. *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998) (internal quotation marks omitted).

This Court has accordingly recognized a third exception to the well-pleaded complaint rule for putative state-law claims that properly arise under federal common law. *New SD, Inc. v. Rockwell International Corp.*, 79 F.3d 953 (9th Cir. 1996); *see also Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184-85 (9th Cir. 2002); *ARCO Environmental Remediation, LLC v. Department of Health & Environmental Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000). Other Circuits likewise treat claims properly arising under federal common law as an independent basis for removal. *See, e.g., Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 924 (5th Cir. 1997).

Rehearing here is required to ensure that claims governed by federal common law are properly removable to federal court — consistent with this Court's precedent before the panel decision. Such claims present important questions relating to constitutional structure, federal statutes, separation of powers, and federalism; it is essential that they be afforded a federal forum.

5

**B.  Whether this case is governed by federal or state law is an issue of exceptional importance requiring rehearing.**

The panel did not address a longstanding line of Supreme Court cases (antedating the CAA) under which the Cities' claims are governed by federal common law.  Instead, the panel emphasized that the CAA displaced any applicable federal common law and did not itself authorize removal.  That reasoning is fundamentally flawed, and it further underscores the need for rehearing.

Before the enactment of the CAA and Clean Water Act (CWA), cross-boundary tort claims associated with air and water pollution arose under federal common law.  "Until fairly recently," the Supreme Court explained, "federal common law governed the use and misuse of interstate water."  *International Paper Co. v. Ouellette*, 479 U.S. 481, 487 (1987); *see also Illinois v. City of Milwaukee*, 406 U.S. 91, 103 (1972) (*Milwaukee I*).  These federal common law claims governed to the exclusion of state law.  *City of Milwaukee v. Illinois*, 451 U.S. 304, 313 n.7 (1981) (*Milwaukee II*) (Where "federal common law exists, . . . state law cannot be used."); *see also Georgia v. Tennessee Copper Co.*, 206 U.S. 230 (1907) (applying federal common law to interstate air pollution).  Indeed, the Cities' claims here encompass interstate *and international* emissions.

In evaluating the applicability of *Grable*, the panel mistakenly concluded that "the Supreme Court has not yet determined whether there is a federal common law of public nuisance relating to interstate pollution."  Opinion at 19 (citing *AEP*, 564

U.S. at 423). Although it was an "academic question" in *AEP* whether the plaintiffs could maintain a federal common law claim, that was only because, on the facts of that case, "any such claim would be displaced" by the CAA. 564 U.S. at 423. The Court nowhere suggested that, absent the CAA, such claims could properly have been asserted under state law rather than federal common law.

As recognized in *Ouellette*, the enactment of the CAA and CWA displaced federal common law and authorized a limited role for state law in addressing cross-boundary pollution torts. But that does not change the inherent constitutional vesting of this subject matter in federal law. True, the Court held that the CWA's savings clause authorizes some role for state tort law. But such claims are limited by statute to intrastate matters. 479 U.S. at 492. Because the CWA (like the CAA) vested permitting authority in the State in which a source was located, the Court concluded that the CWA — like federal common law before it — does not authorize States to impose their state tort law on conduct occurring (and subject to permitting) in other States. The courts of appeals have found that a similar analysis applies to the CAA. *See Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685, 693 (6th Cir. 2015); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 190-91 (3d Cir. 2013); *North Carolina ex rel. Cooper v. TVA*, 615 F.3d 291, 301 (4th Cir. 2010).

The recognition of state-law remedies in *Ouellette* was limited to that intrastate context. Congress otherwise "intended to dominate the field of pollution

regulation," 479 U.S. at 492, leaving limited room for state law. Here, the Cities' claims fall outside the circumscribed, cross-boundary nuisance claim authorized by *Ouellette*. It follows, therefore, that the CAA does not change the existing background rule that the Cities' interstate and international claims, which are inherently and necessarily federal in nature, cannot be pled under state law.

It would be inconsistent with the structure of the CAA to hold that Congress intended to resurrect state-law claims that had never previously been viable in light of federal common law. Nor can the CAA's "savings" clause be read to *create* claims that are antithetical to the Act's role as the sole federal statutory framework for regulation of interstate air pollution. "It would be extraordinary for Congress, after devising an elaborate permit system that sets clear standards, to tolerate common-law suits that have the potential to undermine this regulatory structure." *Id*. at 497.

It thus is immaterial that, as the panel emphasized, any federal common-law claims that might otherwise have been cognizable "are displaced by the Clean Air Act." Opinion at 19-20. The panel confused the question whether the subject matter of the claims asserted is governed by federal common law with the whether federal law ultimately provides a cause of action on the merits. *Standard Oil*, 332 U.S. at 314-17. Contrary to the panel's reasoning, the Supreme Court has repeatedly recognized that a claim asserted in a sphere governed by federal common law —

8

which would arise under federal law for jurisdictional purposes — may nonetheless fail on the merits if there are reasons not to create a cause of action. *See, e.g.*, *Milwaukee II*, 451 U.S. at 309, 332; *cf. Correctional Services Co. v. Malesko*, 534 U.S. 61, 68-74 (2001) (acknowledging constitutional basis of *Bivens* remedy but declining to recognize a remedy on particular facts).

In this arena, the Supreme Court has decided that federal courts should not recognize a federal cause of action. But that is because Congress adopted a comprehensive scheme that displaces judicially created remedies. *AEP*, 564 U.S. at 424. That rationale does not affect the fundamental point for purposes of *removal jurisdiction* — namely, that this is an area where (except in the narrow circumstances identified in *Ouellette*) as a matter of constitutional structure any claim necessarily and inherently arises under federal rather than state law.

Moreover, the Cities' claims do not fall into the narrow exception identified in *Ouellette*. Rather than suing a particular defendant for its specific conduct in California, the Cities sued Defendants collectively. They assert that Defendants are liable for the effects of climate change based on their extraction, refining, distribution, and handling of fossil fuels over many decades, throughout the nation and abroad. The harm alleged is the attenuated result of emissions occurring and accumulating *worldwide*. Those emissions are in turn the result of a host of economic activities by utilities, industrial facilities, vehicles, and other actors. And

the harm alleged and remedy sought is billions of dollars for infrastructure to protect against the indirect impact of rising temperatures, ocean levels, and flooding. Such flooding, however, logically impacts *all* of this Nation's (and other nations') coastal states, territories, and possessions — not just these Cities — including public property of the national government. There is no way to apply *Ouellette's* "source state" concept to this house of cards.

Notably, the federal interests in the subject matter are acute. The Cities now centrally assert that the use of fossil fuels is (and, implicitly, has for decades been) unreasonable under one State's tort law. But federal law and policy has long declared that fossil "fuels are strategically important domestic resources that should be developed to reduce the growing dependence of the United States on politically and economically unstable sources of foreign oil imports." 42 U.S.C. § 15927(b)(1). For example, Congress ordered the Secretary of the Interior to "make available for leasing such land as the Secretary considers to be necessary to conduct research and development activities with respect to technologies for the recovery of liquid fuels from oil shale and tar sands resources on public lands." *Id.* § 15927(c).

Consequently, the Cities' novel claims are not only at odds with the structure of the CAA. Their sweeping breadth is also of an inherently regulatory character far afield from a traditional, common-law tort. If successful, these claims would, in practice, impose a tax on fossil-fuel production and use nationwide and potentially

worldwide — but to the sole benefit of these Cities for an alleged harm shared by many. This would be a parallel regulatory structure to that of the CAA, imposed not on activities in a single State — where the Act grants States regulatory authority — but on the economy as a whole. The fact that numerous localities (but only a fraction of the total) have brought these claims further highlights their practical effect in regulating behavior nationwide.

Because the cross-boundary claims in this case bear no resemblance to localized claims — but rather seek to impose liability for conduct occurring on and impacting federal property and in other States — they must be governed by federal common law. This was the rule before the CAA was adopted, and the CAA remedies did not change that pre-existing rule. Congress's exercise of the very national powers that require any common law in this context to be federal in the first place emphatically confirmed that the Cities' asserted claims are dependent on and necessarily governed by federal law. [1]

The panel therefore erred. It declined to consider the existence of federal common law. And it conflated the jurisdictional question whether a putative state

---

[1] Congress has provided procedures and mechanisms to address cross-boundary pollution in the CAA. For example, although States may not regulate out-of-state sources, affected States may comment on proposed rules, 42 U.S.C. § 7607(d)(5); certain permits, § 7475(a)(2); and state implementation plans submitted to EPA, § 7410(a)(2)(C); 40 C.F.R. § 51.102(a). Affected States may then seek judicial review of EPA's consequent actions. 42 U.S.C. § 7607(b).

claim properly arises under federal law with the merits question whether federal common law provides a cause of action for that asserted liability. The errors are of exceptional importance and should be resolved on rehearing. The Cities' claims are irreconcilable with the constitutional commitment of such matters to the national government and the relative rights and obligations of the national government and States under the structure of the Constitution (as the Supreme Court recognized by holding that interstate pollution claims are governed by federal common law). The subject matter of these claims necessarily "aris[es] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, not the law of 50 different States, and thereby provides a basis for removal, *see id.* § 1441(a)(1)(A).

## II.    Rehearing is necessary to restore this Court's uniform approach to deciding whether improper removal may be excused when a jurisdictional defect is cured before a decision on the merits.

The Supreme Court and most federal courts of appeal, including this Court, have ruled that improper removal may be excused if a district court issues its judgment after the jurisdictional defect is cured. By the same token, a plaintiff's ability to contest removal is waived where it cures the jurisdictional defect and continues to litigate in federal court. Precluding the relitigation in state court of claims that have already been decided in federal court promotes finality, efficiency, and judicial economy — and discourages gamesmanship.

The panel took a wrong turn on this exceptionally important issue. It excluded dismissals pursuant to Federal Rule of Civil Procedure 12(b)(6) from this general rule. This creates perverse litigation incentives. It also conflicts with Supreme Court precedent, this Court's own precedent, and that of most federal courts of appeal.

The Supreme Court, this Court, and seven other Circuits have ruled that, once a jurisdictional defect is cured and the district court enters judgment, considerations of finality, efficiency, and economy will excuse a defective removal in contravention of 28 U.S.C. § 1441(a).[2] In *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 63 (1996), the Supreme Court considered whether a diversity case that was improperly removed, but in which the non-diverse parties eventually settled, should nonetheless be remanded after trial. The Court established a rule that, despite improper removal, "[o]nce a diversity case has been tried in federal court . . . considerations of finality, efficiency, and economy become overwhelming." *Id.* at 63. The weight of these concerns is still more overwhelming here. The Cities confirmed federal jurisdiction by amending their complaints, *and indeed declined to avail themselves of the opportunity for interlocutory appeal that the district court afforded them.*

---

[2] The Fifth, Eleventh, and Sixth Circuits, by contrast, agree with the position taken by the panel. *See Camsoft Data Systems, Inc. v. Southern Electronics Supply, Inc.*, 756 F.3d 327, 338 (5th Cir. 2014); *Thermoset Corp. v. Building Materials Corp. of America*, 849 F.3d 1313 (11th Cir. 2017); *Gentek Building Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 327 (6th Cir. 2007).

Several courts, including this one, have applied the *Caterpillar* rule in the context of dismissal or earlier stages of litigation and so refused to remand. In similar circumstances, this Court reviewed a district court's motion to dismiss rather than remanding the case to state court — despite finding that the case had been improperly removed. *Retail Property Trust v. United Brotherhood of Carpenters*, 768 F.3d 938, 949 n.6 (9th Cir. 2014). Because the plaintiff conferred jurisdiction on the district court by adding federal claims, the Court held that the district court's dismissal was not improper for lack of jurisdiction and not subject to vacatur for remand: "The question whether the district court erred in denying [plaintiff's] motions to remand is thus moot." *Id*. The panel did not explain its failure to apply this Court's precedent in *Retail Property Trust*. *See* Opinion at 23-24. Nor could it. The cases are materially indistinguishable.

The Third Circuit has held that, after a jurisdictional defect is cured, even preliminary decisions by the district court should prevent remand. *See Zambelli Fireworks Manufacturing Co., Inc. v. Wood*, 592 F.3d 412, 420-21 (3d Cir. 2010). Federal jurisdiction in *Zambelli* was based on diversity, not the existence of a federal question. But the case is significant for the weight that the Third Circuit assigned to *Caterpillar*'s considerations of efficiency, fairness, and judicial economy. *See also In re Lipitor Antitrust Litigation*, 855 F.3d 126, 150 (3d Cir. 2017) (ruling that the same interests counsel in favor of retaining jurisdiction over a motion to dismiss).

14

The Fourth Circuit has gone still further. In *Moffitt v. Residential Funding Co., LLC*, 604 F.3d 156 (4th Cir. 2010), the court retained jurisdiction over the plaintiff's interlocutory appeal from the district court's order denying remand. The court ruled that just as remand to state court *following* a federal decision on the merits can be costly, "[r]equiring pointless movement between state and federal court *before a case is tried on the merits* can likewise impose significant costs on both courts and litigants." *Id*. at 160 (emphasis added). The court reasoned that "concerns of judicial economy are often implicated after a case reaches final judgment, [but] they are not confined to that situation," and it declined to remand "now that jurisdiction has been established." *Id*.

The standards established in most other Circuits similarly do not look to when the judgment is entered. The Eighth Circuit viewed *Caterpillar* as "a categorical rule, not a case-by-case inquiry into how much time was spent litigating." *Ellingsworth v. Vermeer Manufacturing Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). It rejected "attempts to confine *Caterpillar* to . . . proceedings [that] have carried on for an unusually long time or culminated in a jury trial." *Id*. The Tenth Circuit also would have sustained federal jurisdiction here, holding that remand after a jurisdictional defect is cured is improper when "judgment is based on . . . a district court's ruling on a dispositive motion." *Paros Properties, LLC v. Colorado Casualty Insurance Co.*, 835 F.3d 1264, 1273 (10th Cir. 2016) (internal quotation marks omitted).

15

Moreover, where a plaintiff amends the complaint to add federal claims, as the panel concluded that the Cities had done here, Opinion at 24 n.8, the Second, First, and Seventh Circuits specifically hold that remand is improper. The Second Circuit articulated the general principle: "if a district court erroneously exercises removal jurisdiction over an action, and the plaintiff voluntarily amends the complaint to allege federal claims, we will not remand for want of jurisdiction." *Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 56 (2d Cir. 1996) (retaining jurisdiction over Rule 12(b)(6) dismissal); *see also Brough v. United States Steelworkers of America*, 437 F.2d 748, 749-50 (1st Cir. 1971); *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185 (7th Cir. 1984).

The rule that this Court adopted in *Retail Property Trust* was correct. Once a case improperly removed to federal court is decided on a motion to dismiss, a district court may retain jurisdiction if the jurisdictional defect is cured. The Supreme Court has repeatedly emphasized the benefits of clear jurisdictional rules. *Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 14 (2015). This standard is clear and also promotes the countervailing interests in finality, efficiency, and economy that the Supreme Court found significant in *Caterpillar*. An order of dismissal pursuant to Rule 12(b)(6) is a judgment on the merits. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). If, like the district court's order in the

present case, dismissal pursuant to Rule 12(b)(6) constitutes a sound final judgment and one that also represents the most efficient resolution to the litigation.

Any other rule would encourage parties who are aware of latent jurisdictional defects to proceed to litigation on the merits in the hope of securing a favorable ruling. This promotes gamesmanship and an attendant waste of judicial resources. If a plaintiff opts to "thr[o]w in the towel" and take advantage of the forum by adding a federal claim rather than "st[i]ck by his guns and . . . [be] vindicated . . . on appeal," he or she was "bound to remain there." *Bernstein*, 738 F.2d at 185. "Otherwise [the plaintiff] would be in a position where if he won his case on the merits in federal court he could claim to have raised the federal question in his amended complaint voluntarily, and if he lost he could claim to have raised it involuntarily and to be entitled to start over in state court." *Id.*; *see also Brough*, 437 F.3d at 750 ("Clearly plaintiff cannot be permitted to invoke the jurisdiction of the federal court, and then disclaim it when he loses.").

Rehearing is also necessary, therefore, to resolve this intra- and (pending) inter-Circuit conflict of exceptional importance.

## CONCLUSION

For the foregoing reasons, this Court should grant the Petition for Rehearing.

17

Respectfully submitted,

s/ Eric Grant
JONATHAN D. BRIGHTBILL
ERIC GRANT
*Deputy Assistant Attorneys General*
ROBERT J. LUNDMAN
R. JUSTIN SMITH
CHRISTINE W. ENNIS
*Attorneys*

August 3, 2020                     Environment and Natural Resources Division
90-12-04729                        U.S. Department of Justice

## Form 8.  Certificate of Compliance for Briefs

**9th Cir. Case Number(s)**          18-16663

I am the attorney or self-represented party.

**This brief contains 4,196 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[x] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [  ] it is a joint brief submitted by separately represented parties;
  [  ] a party or parties are filing a single brief in response to multiple briefs; or
  [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature**    s/ Eric Grant

**Date**         August 3, 2020